IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SHERRI L. DAY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-04-0620 |
| | § | |
| | § | |
| PATTERSON DENTAL SUPPLY INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

Sherri L. Day sued her former employer, Patterson Dental Supply, Inc. under Title VII of the Civil Rights Act of 1974, as amended, 42 U.S.C. § 2000e, *et seq.,* alleging that she was sexually harassed by a coworker and fired after she repeatedly complained to management and finally threatened to take her complaints to the corporate office. Day alleges a sexually hostile work environment and retaliation. Patterson has moved for summary judgment on all claims (Docket Entry No. 13), to which Day has responded, (Docket Entry No.18), Patterson has replied, (Docket Entry No. 22), and Day surreplied, (Docket Entry No. 23).[1] Based on a careful review of the pleadings; the motion, response, reply to the response, and

---

[1] The parties have also filed various motions in limine pertaining to their joint pretrial order, which will be addressed by separate order. (Docket Entry Nos. 25, 26).

surreply to the reply; the record; and the applicable law, this court grants Patterson's motion on the sexual harassment and hostile work environment claims and denies the motion for summary judgment on the retaliation claim.

If the parties wish to supplement their joint pretrial order, they may do so by **March 17, 2006**. Docket call is rescheduled for **March 31, 2006**, at 2:00 p.m. in Courtroom 11-B.

The reasons for the summary judgment ruling are explained below.

**I.     Background**

Day started work as a customer service representative at Patterson's Houston branch office in April 2001. (Docket Entry No. 13, Ex. C at 73–74). She was told of the job at Patterson by a Patterson sales representative, James Short, the same person Day accuses of sexually harassing her after she began working at Patterson. Day had known Short for fourteen years before she began working at Patterson. Short regularly went to the dental office where Day worked to market Patterson dental products. Day, who was looking for a job with more hours and benefits, applied after Short explained that Patterson needed a new customer service representative in its Houston branch office. Day listed Short as a reference on her Patterson job application. (*Id.* at 78; Ex. D).

Day began working at Patterson on April 18, 2001. (Docket Entry No. 13, Ex. D). As a customer service representative, Day answered the phone and took merchandise orders for dental products, researched products for clients, entered customer orders received by fax and from Patterson sales representatives in the field, and filled in for the receptionist as needed. Sherry Hale, the customer service manager, served as Day's immediate supervisor.

(Docket Entry No. 13, Ex. E at 37, 43). Gary Slade, operations manager, oversaw Hale. Tim Wagstaff served as manager of the branch. (Docket Entry No. 13, Ex. C at 89).

Short came to the Patterson office approximately once a week or once every two weeks and would see Day for approximately five to ten minutes on these visits. Day alleges that three months after she began working at Patterson, in July 2001, Short invited her and her young son to go with him on a trip to Costa Rica. Day considered this sexual harassment and complained to Slade. Day alleges that in July or August 2001, Short kissed her neck; that on several occasions, he left orders on her desk with inappropriate notes; that he made inappropriate comments about her body, especially after she became pregnant; and that on three to four occasions, he touched her inappropriately. (*Id.* at 101–03, 118–21, 138–39, 141–42). Day testified that she reported each of these incidents to Slade after they happened. (*Id.* at 104, 123, 125–26, 142–43). According to Day, Slade assured her that he would talk to Short, but the conduct continued. Day alleges that in the fall of 2002, she told Slade that she would take her complaints to Patterson's corporate office in Minnesota because neither Slade nor anyone else in the Houston branch office had stopped Short's harassing conduct. (*Id.* at 144–45). Patterson fired Day within a few weeks of her last complaint about Short. (*Id.* at 166).

Patterson contests Day's account of the complaints she made. Slade testified that Day complained to him about Short only twice, once in the mid-to-late spring of 2002, and the second time the day she was fired. Slade testified that in the spring of 2002, Day told him that she had "a sexual harassment issue with Mr. Short." According to Slade, when he asked

Day if she wanted him to speak to Short, she said, "Oh, no, that's just Jim being Jim. We've known each other for years." (Docket Entry No. 13, Ex. E at 55). Slade further testified that Day did not give him any details and never told him that Short touched her inappropriately. (*Id.* at 55–56).

The summary judgment evidence as to the reason Patterson fired Day is also disputed. Day testified that her work at Patterson was excellent; that she received a bonus and a raise; that she had received a good evaluation; and that she had not been counseled, disciplined, written up, or otherwise informed that her job performance was deficient until she was fired in October 2002. In contrast, Patterson asserts that Day was the subject of repeated customer complaints about mistakes in orders and other problems in the quality of her work, and of complaints from her coworkers about the quantity and quality of her work. Wagstaff testified that he received at least six complaints from customers about Day, and that he had never received complaints about specific customer service representatives before customers specifically complained about Day. Wagstaff also testified that several of Day's coworkers complained about her inefficiency, which required them to do more work. He also testified that Day made frequent mistakes on orders and spent company time on lengthy personal phone calls. (Docket Entry No. 13, Ex. G at 44). Patterson also introduced statements that Day frequently left her work station, missing calls from customers, and shopped on the Internet during company time. Slade testified that he counseled Day six times over the summer and early fall of 2002 "about staying at her desk." (Docket Entry No. 13, Ex. E at 77). Patterson did not document any of Day's alleged deficiencies or any counseling or

warnings. Wagstaff admitted that its employment files, which stored employee reviews, generally contained "any particular information that might be deemed important to follow up on." (Docket Entry No. 18, Ex. C at 27–28). The only written evaluation in the file is an unsigned job performance evaluation dated May 13, 2002 that gives Day favorable reviews in every area of her job. (Docket Entry No. 18, Ex. C).

Day also received a bonus of over $3,000 in the spring of 2002, a raise in June 2002, and $300 worth of American Express gift checks from Slade on August 27, 2002. (Docket Entry No. 13, Ex. C at 157, 160). Slade testified that he gave Day the American Express checks because she asked for an additional one percent raise and Patterson did not "want to lose" her as an employee, testimony that is at odds with the position that Day's work had deteriorated starting in the summer of 2002. (Docket Entry No. 13, Ex. E at 65). Day claims that Slade gave her the money to keep her from complaining to his superiors about the Houston branch's failure to address Short's offensive conduct. (Docket Entry No. 13, Ex. C at 159).

Day testified that, shortly before she was fired, Slade called her into his office and told her she was taking too many bathroom breaks. (*Id.* at 162). Day was seven months pregnant. Day testified that when she explained that her physical condition required frequent bathroom trips, Slade replied, "Perhaps you would be more comfortable at home in your condition." (*Id.* at 163).[2] About a week later, on October 22, 2002, Slade fired Day. When Day asked

---

[2] Slade denied making this statement and that he explained to her that "he understood" her need to use the restroom more often because she was pregnant. (Docket Entry No. 13, Ex. E at 77).

why, Slade allegedly explained that it was because she had not "cut down on [her] rest room breaks." (*Id.* at 164). Slade then told Day that she would receive a severance package and that Patterson would give her a good reference. (*Id.* at 165). Day asserts that she told Slade that she believed she was being fired because of her complaints about Short's sexual harassment and about Slade's failure to stop it. Day told Slade that she would be filing something with the EEOC. According to Day, Slade said, "Well, you can forget your severance pay." (*Id.*). Slade disputes this account of the conversations before and after Day was fired. It is undisputed that Day did not receive a severance package. Over a year later, Day filed a complaint with the EEOC.

After an investigation, the EEOC issued a determination that reads, in relevant part, as follows:

> Examination of the evidence reveals [Patterson's] management official, having knowledge of the alleged sex discrimination, failed to take effective corrective action to investigate and stop harassment experienced by [Day].
>
> Moreover, in light of [Patterson's] failure to substantiate its assertion that [Day] was discharged for poor performance, combined with evidence of pretext, it is reasonable to conclude that the true reason for [Day's] termination is retaliation for her complaint to management that she was subjected to unlawful sex discrimination.

(Docket Entry No. 18, Ex. D). Day timely filed this lawsuit. Day alleges that Short sexually harassed her and that Patterson permitted a hostile work environment and retaliated against Day for reporting Short's misconduct. Patterson moved for summary judgment on both claims. In response, Day addresses only the retaliation claim, which is the focus of this

opinion.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. Under Rule 56(c), the moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 (5th Cir. 1997). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmovant cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. *See Prejean v. Foster*, 227 F.3d 504, 508 (5th Cir. 2000). The nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See id.* The nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Webb v. Cardiothoracic Surgery Assocs.*, 139 F.3d 532, 536 (5th Cir. 1998) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986).

In deciding a summary judgment motion, the court reviews the facts drawing all reasonable inferences in the light most favorable to the nonmovant. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002); *Anderson*, 477 U.S. at 255. "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

### III. Sexual Harassment and a Hostile Work Environment

A hostile-work-environment claim consists of five elements: (1) the plaintiff belongs to a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment affected a term, condition, or privilege of her employment; and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action. *Jones v. Flagship Int'l*, 793 F.2d 714, 719-20 (5th Cir.1986). For harassment to affect a term, condition, or privilege of employment, it must be both objectively and subjectively abusive. *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 21–22 (1993); *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998). Whether an environment is objectively hostile or abusive is determined by

considering the totality of the circumstances. *Harris*, 510 U.S. at 23. Although no single factor is required, courts look to (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating as opposed to a mere offensive utterance; (4) whether it unreasonably interferes with an employee's work performance, *id.*; and (5) whether the complained-of conduct undermines the plaintiff's workplace competence, *Butler,* 161 F.3d at 270. To survive summary judgment, the harassment must be "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).

Patterson moved for summary judgment on the ground that Day has failed to raise a fact issue as to whether the harassment was severe or pervasive. The record reveals that many of the incidents are time-barred; that they occurred infrequently; that they did not interfere with Day's ability to perform her job; and that they were far short of what the Fifth Circuit has found necessary to raise a fact issue as to a sexually hostile work environment. Day did not respond to Patterson's motion for summary judgment as to this claim. Patterson's motion for summary judgment on Day's hostile work environment claim is granted.

**IV.   Retaliation**

Under Title VII, a plaintiff establishes a *prima facie* case for unlawful retaliation by proving that: (1) she engaged in activity protected by Title VII; (2) an adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse

employment action. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002) (citing *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001)); *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996); *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983). The causal link required by the third prong of the *prima facie* case does not rise to the level of a "but for" standard. *Raggs*, 278 F.3d at 471. "The plaintiff 'need not prove that her protected activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a *prima facie* case.'" *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (quoting *Long*, 88 F.3d at 305 n.4 (additional citations omitted)). If the plaintiff presents evidence supporting the *prima facie* case with evidence that the reasons given by the employer for the adverse employment action were pretextual, a jury may infer the existence of retaliation.

A *prima facie* case creates a presumption that the employer unlawfully discriminated against the plaintiff. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999). The employer must then respond with a legitimate, nondiscriminatory reason for the challenged employment decision. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *Bauer*, 169 F.3d at 966. "This burden on the employer is one only of production, not persuasion, involving no credibility assessments." *Russell*, 235 F.3d at 219; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993)) ("The defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination was not the cause of the employment action."). If the defendant meets its burden, the presumption

of discrimination created by the *prima facie* case disappears, and the plaintiff is left with the ultimate burden of proving discrimination. *Hicks*, 509 U.S. at 511–12.

The plaintiff may meet the ultimate burden with evidence tending to show that the reason offered by the defendant is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 804. Evidence demonstrating the falsity of the defendant's explanation, taken together with the *prima facie* case, is likely to support an inference of discrimination even without further evidence of the defendant's true motive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147–48 (2000). The plaintiff can survive summary judgment by producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896–97 (5th Cir. 2003); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001). If the plaintiff fails to produce substantial evidence of pretext, or produces evidence permitting only an indisputably tenuous inference of pretext, summary judgment in favor of the defendant is appropriate. *See West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003); *Sandstad*, 309 F.3d at 894.

A plaintiff may raise a fact issue as to pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or "unworthy of credence." *Reeves*, 530 U.S. at 143; *West*, 330 F.3d at 385. An explanation is false or unworthy of credence if it is not the real reason for the adverse employment action. *See Sandstad*, 309 F.3d at 899. Evidence that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case, is likely to support an

inference of discrimination even without further evidence of defendant's true motive. *Id.* at 897; *Russell*, 235 F.3d at 223.  No further evidence of discriminatory animus is required because "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation . . . ." *Reeves*, 530 U.S. at 147–48.  The "rare" instances in which a showing of pretext is insufficient to establish discrimination are when the record conclusively reveals some other, nondiscriminatory reason for the employer's decision, or when the plaintiff creates only a weak issue of fact as to whether the employer's reason was untrue, and there was abundant and uncontroverted evidence that no discrimination occurred.  *See Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 148); *Rubinstein v. Adm'rs of Tulane Educ. Fund*, 218 F.3d 392, 400 (5th Cir. 2000).

Day suffered an adverse employment action: Patterson terminated her employment on October 22, 2002.  Day engaged in protected activity by complaining to Slade about Short's conduct.  In deciding the summary judgment motion, this court must accept as true Day's allegations that she made repeated complaints to Slade and at least one complaint to Wagstaff.  Patterson claims that Day has failed to carry her *prima facie* burden by failing to introduce proof of a causal connection between Day's protected activity and her job termination.  (Docket Entry No. 13 at 15).

Patterson relies on the time that elapsed between Day's first complaint about Short — in July of 2001 — and Patterson's decision to fire her — in October of 2002 — to argue that causation fails as a matter of law.  Although "timing can sometimes be a relevant factor in determining whether a causal connection exists where the timing between a

protected activity and an adverse employment action is suspiciously proximate, the contrapositive inference does not necessarily follow," particularly in a summary judgment proceeding. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 417 n.9 (5th Cir. 2003) (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 408–10 (5th Cir. 1999)). Day produced evidence of a short time between her protected behavior and her firing. Day alleged and testified that she complained to Slade about the harassment beginning in July of 2001, made other complaints during 2001 and 2002, and shortly before she was fired, complained again and stated her intent to go over Slade's head and take her complaints to Patterson's corporate headquarters. The summary judgment record indicates that Day repeatedly asked both Slade and Wagstaff to prevent Short from further harassing her, and they did nothing. In the summer of 2002, when Day stated that she was going to Patterson company headquarters with her complaints, Slade gave Day $300 in American Express gift checks and asked Day not to tell anyone else about the money. Day was fired within a few weeks of her last complaint about Short. Although Patterson disputes Day's version of the events, the evidence, viewed in the light most favorable to Day, precludes a finding that as a matter of law there could be no inference of a causal connection between Day's complaints and Patterson's decision to fire her.

Patterson claims that summary judgment is nevertheless warranted because Patterson terminated Day for nondiscriminatory, nonretaliatory reasons. (Docket Entry No. 13 at 16). To support this claim, Patterson relies on after-the-fact statements by Slade and Wagstaff that they decided to fire Day because of her poor job performance. Day testified that she had

received no complaints, reprimands, or warnings about her job performance.  Day's personnel file contained no documented incidents of the problems Slade and Wagstaff testified about in this litigation.  To the contrary, Day's file includes a positive performance review dated May 13, 2002, less than six months before Day lost her job.[3]  Patterson does not dispute that Day received both a raise and a bonus the summer before she was fired.  In an effort to explain why Day received $300 in American Express gift checks on August 27, 2002, Slade testified that Patterson did not "want to lose" Day at that time.  (Docket Entry No. 13, Ex. C at 159).  Patterson asserts that less than two months later, Day was fired for persistent and prolonged poor performance.  A jury could conclude that Patterson's proffered reason for firing Day is unworthy of credence.  *Cf. Reeves*, 530 U.S. at 143; *West*, 330 F.3d at 385.  In light of the evidence Day presents, a jury could infer that Patterson fired her in retaliation for her complaints about Short's sexually harassing behavior and her threats to carry the complaints to the corporate office.

Patterson's motion for summary judgment on the retaliation claim is denied.

## V.     Conclusion

Patterson's motion for summary judgment is granted in part and denied in part.  This case is ready for trial.  If the parties wish to supplement their joint pretrial order, they may do so by **March 17, 2006**.  Docket call for this case is rescheduled for **March 31, 2006, at**

---

[3] The parties dispute the value of this unsigned evaluation.  In deciding a motion for summary judgment, and in the absence of documented contemporaneous reports of problems with Day's performance, this court cannot disregard the evaluation as evidence supporting Day's argument that the Patterson's proffered reason for firing her was a pretext for retaliation.

**2:00 p.m.** in Courtroom 11-B.

   SIGNED on February 13, 2006, at Houston, Texas.

                   _____
                     Lee H. Rosenthal
                  United States District Judge